Paul L. Dashefsky
317 Middle Country Road
Smithtown, New York 11787
(631) 361-7981

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PHILOMENA CINDY RINALDI,

                       Plaintiff,

    -against-

                                              CV 12-141 (PKC) (ARL)

QUALITY KING DISTRIBUTORS
INCORPORATED,                             **RULE 56.1 COUNTER-STATEMENT**
                                               **OF MATERIAL FACTS**

                    Defendant.
------------------------------------------------------------X

The Plaintiff, Philomena Cindy Rinaldi, pursuant to Rule 56.1 of the Local Rules, submits the following Counter-Statement of Material Facts. Those Material Facts that were not submitted at all by the Defendant, Quality King Distributors, Incorporated ("Quality King") and are being submitted for the first time by the Plaintiff commence at Material Fact numbered "82," herein. (References to the deposition transcripts herein will be designated as follows: Plaintiff's deposition transcript, "Pl. Tr. ____;" Phyllis Calderone's deposition transcript, "Cal. Tr. ____;" and Olga Lancaster's deposition transcript, "Lan. Tr. ____.") :

    1.    Undisputed

    2.    Undisputed

    3.    Undisputed

    4.    Undisputed

1

5. Undisputed

6. Linda Semelrath was hired by Quality King to be both an assistant to Phyllis Calderone and a backup to the Plaintiff, who interviewed Ms. Semelrath as part of the hiring process. Pl. Tr. 22-23; Cal. Tr. 15-16.

7. Undisputed

8. Undisputed

9. Undisputed

10. Undisputed

11. Undisputed

12. Undisputed

13. Undisputed

14. Undisputed

15. Undisputed

16. Undisputed

17. Undisputed

18. Undisputed

19. Undisputed

20. Undisputed

21. The Policy mandates that an employee bring the concerns to the attention of the employee's immediate supervisor and the Human Resources Department which, for the Plaintiff, meant bringing it to the attention of Olga Lancaster, who was the individual causing the concern and the unlawful discrimination; there was no designated individual to whom to

bring the concerns to for the Plaintiff other than the discriminator, Olga Lancaster. Lan. Tr. 48-49.

22. Undisputed

23. Undisputed

24. Undisputed

25. Undisputed

26. Undisputed

27. Undisputed

28. Undisputed

29. Prior to March 17, 2011, the Plaintiff did not understand her right to take time off under the FMLA because she was worried about her job; no one from Quality King ever provided the Plaintiff with any training regarding the FMLA. Pl. Tr. 81-82, 86-87.

30. Undisputed

31. Quality King's attendance policy for return from absence for medical reasons is that Quality King may require a "fitness for duty" letter from a physician, but that such a "fitness for duty" letter is not mandatory and is at Quality King's discretion. Lan. Tr. 57-58.

32. The Plaintiff's medical condition (depression) required monitoring of medication continually, and were all FMLA related. Pl. Tr. 57, and it is a depression from which the Plaintiff has suffered for over twenty years and which has required medication, monitoring, and hospitalization. Pl. Tr. 59-69, 73-77, 79-80.

33. Undisputed

34. Undisputed

35. Undisputed

36. Undisputed

37. Undisputed

38. Undisputed

39. Undisputed

40. Undisputed

41. Undisputed

42. Undisputed

43. Undisputed

44. Undisputed

45. Undisputed

46. Undisputed

47. Calderone was well aware that the Plaintiff's absences were due to a severe depression, and the Plaintiff told both Calderone and Lancaster about her depression and spoke of it openly, and her absences were always depression related except for one time when Calderone believed that the absence was due to "swollen glands" that may have been related to depression medication that she was taking. Cal. Tr. 18, 26-27; Lan. Tr. 45-47, 62-63, 66-67, 73-74, 90-91.

48. During this entire period of time, the Plaintiff was under medical care for her medical condition (depression) which required monitoring of medication continually. Pl. Tr. 57, 59-69, 73-77, 79-80.

49. The Plaintiff received approval from Quality King to take an unpaid vacation on July 7 and 8, 2011. Pl. Tr. 121.

50. Undisputed

51. When the Plaintiff was absent on July 29, 2011, it was related to her depression Pl. Tr. 129, as were those other absences of hers since her return to work following her approved FMLA leave of absence. Pl. Tr. 103, 107, 110, 113-118, 126-127.

52. Undisputed

53. Undisputed

54. Undisputed

55. The notice commencing the Plaintiff's 90-days probationary period was dated July 29, 2011, which presumably was the date for the commencement of the probationary period. Pl. Tr. 132.

56. Undisputed

57. Undisputed

58. Undisputed

59. Undisputed

60. Undisputed

61. Undisputed

62. The nature of the Plaintiff's medical condition required that she take intermittent FMLA leave rather than a block of weeks, and Olga Lancaster would only allow the Plaintiff to take the accrued FMLA leave in a two week block, not on intermittent days. Pl. Tr. 142, 146-147.

63. Undisputed

64. Undisputed

65. The Plaintiff was absent on October 27 and 28, 2011 because she had a severe pain in her right side and could not breathe, which required medical intervention and diagnostic testing, for which her treating medical practitioner put her out of work. Pl. Tr. 148-151.

66. Undisputed

67. Undisputed

68. Undisputed

69. The Plaintiff still had unused accrued FMLA time to use for days off after her leave. Lan. Tr. 88. The Plaintiff's work was always completed, even in her absence, because she was so well organized that anyone else could perform her work when she was out. Cal. Tr. 20-21. When the Plaintiff was out, her work was completed by her backup, Linda Semelrath, without any problems. Cal. Tr. 22-23.

70. Undisputed

71. Semelrath was hired and employed by Quality King specifically to be a backup for the Plaintiff and to perform the Plaintiff's work when the Plaintiff was absent, and in that regard the Plaintiff trained Semelrath for a period of three months. Cal. Tr. 15-17; Lan. Tr. 37-38.

72. Undisputed

73. The Plaintiff's work was always completed, even in her absence, because she was so well organized that anyone else could perform her work when she was out. Cal. Tr. 20-

21. When the Plaintiff was out, her work was completed by her backup, Linda Semelrath, without any problems. Cal. Tr. 22-23.

74. Quality King offered the Plaintiff the opportunity to take a block of two weeks of FMLA leave, but not intermittent FMLA leave, although the nature of the Plaintiff's medical condition required intermittent leave and not a block of two weeks leave. Pl. Tr. 146-147; Lan. Tr. 92-93.

75. The Plaintiff declined the offer to reduce her daily hours and to take a two weeks block of FMLA leave because those arrangements were not applicable to the requirements of the Plaintiff's medical condition. Pl. Tr. 146-147.

76. The absences that led to Quality King placing the Plaintiff in a probationary status were absences related to the Plaintiff's serious medical condition and to her disability. Pl. Tr. 103, 107, 110, 113-114, 115-118, 126, 127, 129.

77. All of the absences were related to the Plaintiff's depression. Pl. Tr. 103, 107, 110, 113-114, 115-118, 126, 127, 129.

78. Rinaldi followed the appropriate procedure and made her health condition, including that these absences were for depression, well known to Quality King and Olga Lancaster was "sure that [all the absences] were related to her depression;" Lan. Tr. 45-47, 62-63.

79. The absences that caused Quality King to place the Plaintiff on probation, ultimately leading to her discharge on October 31, 2011, were related to the Plaintiff's depression, including the monitoring of her prescribed anti-depressant medication. Lan. Tr. 72-73.

80. The Plaintiff was absent on October 27 and 28, 2011 because she had a severe pain in her right side and could not breathe, which required medical intervention and diagnostic testing, for which her treating medical practitioner put her out of work; the Plaintiff had a serious medical condition. Pl. Tr. 148-151.

81. Undisputed

82. Quality King became aware of the Plaintiff's depression in March 2011, and Phyllis Calderone and Olga Lancaster spoke of it openly. Cal. Tr. 18

83. Quality King knew that the Plaintiff was on medication for depression and that she cried all the time at work. Cal. Tr. 31-32; Lan. Tr. 45-46, 63, 73-74

84. The Plaintiff was so organized that it was simple for someone else to perform her duties when she was out. Cal. Tr. 20-21

85. At all times that the Plaintiff was absent from work, her work was completed by the individual, Linda Semelrath, who was hired by Quality King as the Plaintiff's backup and then trained by the Plaintiff for three months, without any problems and with the work always being completed. Cal. Tr. 22-23

86. The Plaintiff's work in her department was always completed, even when the Plaintiff was absent, and there were never any complaints from her co-workers, including Linda Semelrath and Phyllis Calderone, that they had too much work to perform as a result of the Plaintiff's absences. Cal. Tr. 34-35.

87. After Quality King terminated the Plaintiff's employment on October 31, 2011, only Olga Lancaster, Phyllis Calderone, and Linda Semelrath continued to perform the duties

fitness for duty certification, and it did not matter to Olga Lancaster what reason existed for the Plaintiff's absence from work; Olga Lancaster was terminating the Plaintiff's employment no matter what the reason was for the Plaintiff's absence from work prior to October 31, 2011, even if it were for a serious medical condition or emergency; Lan. Tr. 85-87,98-101; and even though the Plaintiff still had FMLA days left in her accrued bank that she had not yet exhausted. Lan. Tr. 88.

94.   When Olga Lancaster terminated the Plaintiff's employment on October 31, 2011, she told the Plaintiff: She had enough of the Plaintiff and the way the Plaintiff was walking around like she was stoned and bringing the department down; that there was no laughter any more in the department and everyone would ask her how the Plaintiff was and what was wrong with the Plaintiff. Pl. tr. 153.

95.   The Plaintiff's absences from work at Quality King were always "depression related," except for one time when the absence was due to "swollen glands" which may have been related to the Plaintiff's anti-depressant medication. Cal. Tr. 26-27, Lan. Tr. 66-67.

Dated: July 30, 2013
       Smithtown, N.Y.

*Paul L. Dashefsky*