UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PHILOMENA CINDY RINALDI,

                                        Plaintiff,

        -against-

                                                                CV  12-141 (PKC) (ARL)

QUALITY KING DISTRIBUTORS
INCORPORATED,

                                        Defendant.
-----------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


Paul L. Dashefsky
Attorney for Plaintiff
317 Middle Country Rd.
Smithtown, N.Y. 11787
631-361-7981

TABLE OF AUTHORITIES

Page

Breen v. Dept. of Transp.
282 F.3d 839 (D.C. Cir., 2002)                                              9

Carlson v. Inacom Corp.
885 F.Supp. 1314 (D. Nebraska, 1995)                                       10

Dutton v. Johnson Cpounty Board of County Commissioners
859 F.Supp. 498 (D. Kansas, 1994)                                          10

Guice-Mills v. Derwinski
967 F.2d 794 (2nd Cir., 1992)                                               7

McMillan v. City of New York
Docket No. 11-3932 (2nd Cir., 2013)                                         8

Reilly v. Revlon, Inc.
620 F.DSupp.2d 524 (S.D.N.Y., 2009)                                        12

Ward v. Mass. Health Research Inst., Inc.
209 F.3d 29 (1st Cir., 2000)                                                9

Wega v. Center for Disability Rights Inc.
395 Fed.Appx. 782 (2nd Cir., 2010)                                          7

TABLE OF CONTENTS

Page

Introduction                                                              1

Facts                                                                     2

Argument
    I
Plaintiff Should Be Granted Summary Judgment
On Her Claim of Disability Discrimination                                 7

    II
Plaintiff Should Be Granted Summary Judgment
On Her Claims of Retaliation and Interference
Under the FMLA                                                           12

Conclusion                                                               14

INTRODUCTION

This Memorandum of Law is submitted on behalf of the Plaintiff, Philomena Cindy Rinaldi, in support of her motion for summary judgment and in opposition to the Defendant's, Quality King Distributors Incorporated ("Quality King"), motion for summary judgment.

The Complaint in this action alleges that Quality King violated the Family and Medical Leave Act of 1993, 29 USC 2601, et seq. ("FMLA") by placing the Plaintiff on a 90 days period of probation as a result of days of medical leave that she utilized due to her serious medical condition, during which period her employment would be terminated if she took a day off for any reason whatsoever (medical, emergency, or otherwise). The all-encompassing period of probation was imposed, during which the Plaintiff was not permitted to be absent from work for any reason, even though the Plaintiff had not exhausted her bank of available days of FMLA leave for which she was eligible and to which she was entitled. Moreover, although the Plaintiff retained two weeks of FMLA leave entitlement, Quality King chilled her lawful use of the leave by requiring that she use her available two weeks of FMLA leave entitlement in a two week block, rather than on the intermittent basis that her serious health condition required. Ultimately, Quality King terminated the Plaintiff's employment after she was absent as a result of her serious health condition.

Additionally, the Complaint alleges that Quality King violated the Americans with Disabilities Act of 1990, 42 USC 12101, et seq. ("ADA") and the section 296 of the New York Human Rights Law when it terminated the Plaintiff's employment on the basis of her disability (clinical depression).

1

FACTS

The Plaintiff was first employed by Quality King as an assistant payroll clerk, and shortly

thereafter was promoted to a position as payroll manager in 2005. (Defendant's 56.1

Statement, paragraph 3 [hereinafter, references to Defendant's 56.1 Statement will be

designated, "Def. para. ___" and to Plaintiff's 56.1 Statement, "Pl. para. ___ "]). Olga Lancaster,

Quality King's Human Resources Director, was the supervisor of the payroll department

employees. (Def. para. 5). In addition to Mrs. Rinaldi, the payroll department staff included

Phyllis Calderone, another payroll manager (Def. para. 6), and Linda Semelrath, who was

expressly hired by Quality King to be both an assistant to Mrs. Calderone and a backup for the

Plaintiff when she was absent from work. (Pl. para. 6). In fact, the Plaintiff interviewed Ms.

Semelrath as part of the hiring process (Pl. para. 6), and subsequently spent a period of three

months training Ms. Semelrath so that she could perform the Plaintiff's work when the Plaintiff

was absent. (Pl. para. 71).

Mrs. Rinaldi has suffered from clinical depression for over twenty years, requiring

medication, monitoring, and hospitalization. (Pl. para. 32).

On March 17, 2011, Mrs. Rinaldi's depression required that she be hospitalized for a

period of eight days. (Def. para. 33-36). As a result of this serious medical condition

(depression), Mrs. Rinaldi was granted an FMLSA leave of absence for five weeks and two days.

(Def. para. 40).

Both Phyllis Calderone and Olga Lancaster were well aware that the Plaintiff suffered

from a serious depression, and that she was absent in March and April as a result of her serious

medical condition, as well as for absences taken by the Plaintiff thereafter. The Plaintiff told

2

both Ms. Calderone and Ms. Lancaster about her depression and she spoke openly of it at work. All of the Plaintiff's absences after March 2011 (except for two days of a pre-approved vacation on July 7 and 8, 2011 [Pl. para. 49] were all as a result of her depression, except for one time when Ms. Calderone believed that the Plaintiff's absence was a result of "swollen glands," but that the "swollen glands" may have been related to depression medication that the Plaintiff was taking. (Pl. para. 47, 51).

Moreover, Quality King was aware that the Plaintiff cried constantly at work due to her depression. (Pl. para. 83). During the entire period of time from March 2011 until her employment was terminated on October 31, 2011, the Plaintiff was under medical care for her depression, which required constant monitoring and adjustment of her anti-depressant medication. (Pl. para. 48).

Whenever the Plaintiff was absent from work, she followed the appropriate procedures and made her health condition known to Quality King. This included informing Quality King that these absences were all for depression. Olga Lancaster was "sure that [all the Plaintiff's absences] were related to her depression." (Pl. para. 78). At all times that the Plaintiff was absent, she provided Quality King with any medical certification or fitness for duty certification that the Defendant required; she followed all of Quality King's protocol and provided all appropriate documentation. (Pl. para. 88).

Quality King's policy for return from absence for medical reasons is that Quality King **may** require a "fitness for duty" letter from a physician, but that such a "fitness for duty" letter is not mandatory, and is at Quality King's discretion. (Pl. para. 31).

3

On July 29, 2011, the Plaintiff was absent from work. The absence was related to her depression. (Pl. para. 51). As a result of the Plaintiff's absence on July 29, 2011 as a result of her serious medical condition and disability (depression), Ms. Lancaster punished Mrs. Rinaldi by placing her on a 90 days probationary period. (Pl. para. 55; Def. para. 54). Each of the Plaintiff's absences that led up to this punishment was related to the Plaintiff's depression. (Pl. para. 76). Immediately after Ms. Lancaster placed the Plaintiff on a 90 days probationary period, her worsening depression required her to be absent for a week, during which time Ms. Lancaster was well aware that the Plaintiff was receiving medical treatment for her depression. (Pl. para. 91).

Mrs. Rinaldi was absent from work on October 27 and 28, 2011, because she had a severe pain in her right side and could not breathe. Her condition required medical intervention and diagnostic testing, causing the Plaintiff's medical practitioner to put her out of work for a serious medical condition. (Pl. para. 80).

When Mrs. Rinaldi returned to work on October 31, 2011, she provided Ms. Lancaster with medical documentation that Ms. Lancaster deemed acceptable, and therefore Ms. Lancaster did not require any further medical documentation or a fitness for duty certification. Moreover, Ms. Lancaster did not care what reasons existed for the Plaintiff's absence on October 27 and 28, 2011, she was terminating the Plaintiff's employment no matter what, even if the absence was due to a serious illness or an emergency. (Pl. para. 93).

It did not even matter that the Plaintiff still had accrued FMLA leave of absence days available on October 31, 2011 that she still had never exhausted. (Pl. para. 93). Ms. Lancaster had previously instructed the Plaintiff that if she wanted to use her available FMLA leave days,

4

she needed to use them in a block of her entire accrual of days, and not on an intermittent basis; the nature of the Plaintiff's medical condition, however, dictated that if she were to use her available FMLA leave, it would on an intermittent basis. (Pl. para. 62).

When Ms. Lancaster terminated the Plaintiff's employment on October 31, 2011, she made it clear that the termination was on the basis of the Plaintiff's disability. Ms. Lancaster expressly told the Plaintiff that she had enough of the Plaintiff and the way the Plaintiff was walking around like she was stoned, and bringing the department down; she also told the Plaintiff that there was no laughter any more in the department, and that everyone would ask how the Plaintiff was, and what was wrong with the Plaintiff. (Pl. para. 95).

When Ms. Lancaster terminated the Plaintiff's employment, she ignored the fact that Mrs. Rinaldi's work was always completed, even in her absence, because she was so well organized that anyone could perform her work when she was out. When the Plaintiff was absent, her work was completed without any problems by Linda Semelrath, the individual hired for the very purpose of being the Plaintiff's backup. (Pl. para. 69, 71, 73).

Moreover, there were **never** any complaints from the Plaintiff's co-workers, including Linda Semelrath and Phyllis Calderone, that they had too much work to perform as a result of the Plaintiff's absences. (Pl. para. 86).

Even after Ms. Lancaster terminated the Plaintiff's employment on October 31, 2011, the department's work (including the work that was previously performed by the Plaintiff) continued to be performed by only Olga Lancaster, Phyllis Calderone, and Linda Semelrath, and that continues to the present. (Pl. para. 89).

Prior to the termination of her employment, besides the fact that the Plaintiff's work was always completed (even in her absence), the work that the Plaintiff performed was always well done and always completed; there was never any problem with the Plaintiff preparing the payroll. (Pl. para. 89). In fact, the Plaintiff was such a good worker that only a few months prior to the termination of her employment by Ms. Lancaster, the Plaintiff was singled out for her work by Quality King's upper level management. In August 2011, Mike Anderson, Quality King's Chief Financial Officer, recognized the Plaintiff for the good work that she was doing for Quality King, and told her that she should keep up the good work. (Pl. para. 90). Unfortunately, when Ms. Lancaster terminated the Plaintiff's employment, she prevented the Plaintiff from following Mr. King's kind and honest directive.

ARGUMENT

I

## PLAINTIFF SHOULD BE GRANTED SUMMARY JUDGMENT
## ON HER CLAIM OF DISABILITY DISCRIMINATION

The "Applicable Legal Standards" for a case of disability discrimination, as cited by

Quality King at page 10 of its Memorandum of Law, is not a disputed issue. Moreover, that the

Plaintiff meets those standards is likewise clear and should result in the grant of summary

judgment in favor of the Plaintiff.

The Plaintiff's clinical depression and related medication regime is indisputably a

disability within the meaning of the ADA. Guice-Mills v. Derwinski, 967 F.2d 794, 797 (2nd Cir.,

1992) (case decided under the Rehabilitation Act); Wega v. Center for Disability Rights Inc., 395

Fed.Appx. 782 (2nd Cir., 2010) (Summary Order; mental impairment deemed a disability).

Second, contrary to Quality King's argument that the Plaintiff could not perform the

essential functions of her job with or without a reasonable accommodation and, therefore, was

not a qualified individual (prong iii of the analysis), the undisputed facts and acknowledgments

of Ms. Lancaster and Ms. Calderone establish otherwise.

At the time that Ms. Lancaster terminated the Plaintiff's employment, the facts are

undisputed that Mrs. Rinaldi's work was always completed, even in her absence, because she

was so well organized that anyone could perform her work when she was out. When the

Plaintiff was absent, her work was completed without any problems.

Quality King made a reasonable accommodation to have backup for the Plaintiff when

she was absent; it expressly hired Linda Semelrath for that very purpose. Prior to the

termination of her employment, besides the fact that the Plaintiff's work was always completed (even in her absence), the work that the Plaintiff performed was always well done and always completed; there was never any problem with the Plaintiff preparing the payroll.

In fact, the Plaintiff was such a good worker that only a few months prior to the termination of her employment by Ms. Lancaster, the Plaintiff was singled out for her fine work by Quality King's upper level management. In August 2011, Mike Anderson, Quality King's Chief Financial Officer, recognized the Plaintiff for the good work that she was doing for Quality King, and told her that she should keep up the good work.

Moreover, there were **never** any complaints from the Plaintiff's co-workers, including Linda Semelrath and Phyllis Calderone, that they had too much work to perform as a result of the Plaintiff's absences.

"One of the central goals of the [ADA] is to ensure that, if reasonably practicable, individuals are able to obtain and maintain employment without regard to whether they have a disability. To accomplish this goal, the ADA requires that employers provide reasonable accommodations to qualified individuals… " McMillan v. City of New York, Docket No. 11-3932 (2nd Cir., 2013). In McMillan , the Second Circuit carefully analyzed the possibility that a disabled individual would be qualified, despite missing time at work; and that actual physical presence at work may not be an essential requirement of a particular job. The Second Circuit indicated:

> This case highlights the importance of a penetrating factual analysis.
> Physical presence at or by a specific time is not, as a matter of law,
> an essential function of all employment… [A] court must still conduct
> a fact-specific inquiry, drawing all inferences in favor of the non-moving
> party

8

Moreover, an employer bears the burden of establishing that a regular and reliable schedule is an essential job function. Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 34-35 (1st Cir., 2000); Breen v. Dept. of Transp., 282 F.3d 839, 843 (D.C.Cir., 2002).

In the case at bar, the Plaintiff's absence never created a hardship for Quality King. The work was always completed without any evidence of complaints or dissatisfaction from co-workers, including Linda Semelrath and Phyllis Calderone. Not only was it completed, but Quality King acknowledges that the Plaintiff was so well organized, that it was easy for anyone else to perform her work when her health required that Plaintiff be absent. Moreover, the fact that Linda Semelrath was specifically hired and trained to perform the Plaintiff's duties when she was absent underscores the lack of any hardship in effectuating that accommodation.

The fact that the Plaintiff was clearly a qualified individual is underscored by the assessment of Quality King's Chief Financial Officer. In August 2011, Mike Anderson, Quality King's Chief Financial Officer, recognized the Plaintiff for the good work that she was doing for Quality King, and told her that she should keep up the good work. If that is not an imprimatur that the Plaintiff is a qualified individual, what is?

Finally, the reasonable accommodation afforded the Plaintiff by providing backup cannot, under the facts of this case, be deemed to create a hardship for Quality King. Quality King has made an eloquent statement in that regard by retaining the payroll department exactly as it was on October 31, 2011 (the date that the Plaintiff was discharged), except without the Plaintiff. In other words, Olga Lancaster, Phyllis Calderone, and Linda Semelrath are the individuals still performing the duties, including the duties that were previously performed by the Plaintiff (but with Linda Semelrath as her backup for days of the Plaintiff's absence), in

9

the payroll department. If that arrangement were a hardship, why would Quality King continue to operate the same way that it operated on the few days that the Plaintiff was absent?

Even after Ms. Lancaster terminated the Plaintiff's employment on October 31, 2011, the department's work (including the work that was previously performed by the Plaintiff) continued to be performed by only Olga Lancaster, Phyllis Calderone, and Linda Semelrath, and that continues to the present. Obviously, that reasonable accommodation that afforded the Plaintiff coverage for days of absence must be deemed reasonable, and the Plaintiff deemed to be a qualified individual, because the same situation is still performing in the same manner that it always performed in the Plaintiff's absence.

In the case at bar, the only evidence is that Quality King's payroll department's work was always completed, was done well, and without detriment to the Plaintiff's co-workers; it's essential business was completed in an acceptable manner. Therefore, the Plaintiff was an "otherwise qualified individual" despite her absences. Carlson v. Inacom Corp., 885 F.Supp. 1314 (D. Nebraska, 1995). Dutton v. Johnson County Board of County Commissioners, 859 F.Supp. 498 (D. Kansas, 1994).

There is no evidence that the Plaintiff refused a reasonable accommodation. The nature of her medical condition was such that fewer hours in her workday would not have accommodated her one iota. The Plaintiff's condition required the use of intermittent days, such as her accrued FMLA leave days, but Quality King rejected the possibility of the Plaintiff utilizing her remaining FMLA leave entitlement on an intermittent basis. That rejection was unfair, unreasonable, and wrong.

10

Finally, Ms. Lancaster's eloquent comments to the Plaintiff at the time her employment was terminated on October 31, 2011 speaks volumes as to Quality King's motivation and pretext. Her pointed comments are clear and unequivocal: When Ms. Lancaster terminated the Plaintiff's employment on October 31, 2011, she made it clear that the termination was on the basis of the Plaintiff's disability. Ms. Lancaster expressly told the Plaintiff that she had enough of the Plaintiff and the way the Plaintiff was walking around like she was stoned, and bringing the department down; she also told the Plaintiff that there was no laughter any more in the department, and that everyone would ask how the Plaintiff was, and what was wrong with the Plaintiff. This honesty by Ms. Lancaster fully supports Mrs. Rinaldi's claim of disability discrimination in this action.

II

PLAINTIFF SHOULD BE GRANTED SUMMARY JUDGMENT
ON HER CLAIMS OF RETALIATION AND INTERFERENCE
UNDER THE FMLA

In the case at bar, it is clear that the Defendant impeded the Plaintiff in some manner in the exercise of her protected rights provided by the FMLA. Therefore, the Defendant interfered with and violated the Plaintiff's FMLA rights.

First, Ms. Lancaster explicitly advised the Plaintiff that, although she had two weeks of accrued FMLA to which she was entitled, she could not utilize them on an intermittent basis according to her medical needs. Rather, Quality King required that, if she were to use the FMLA leave at all, the leave would have to be taken in a two week block, regardless of the Plaintiff's medical needs. That conduct by Quality King effectively discouraged the Plaintiff from taking her FMLA leave, and is actionable. Reilly v. Revlon, Inc.620 F.Supp.2d 524, 535 (S.D.N.Y., 2009).

In the case at bar, Quality King well knew of the Plaintiff's serious medical condition and that she needed intermittent days off for such things as medication adjustments and an inability to function on certain days. Ms. Lancaster and Ms. Calderone spoke with the Plaintiff at length about her depression and saw her crying constantly at work. They also acknowledged that they knew that the Plaintiff's absences were as a result of her depression. Once Quality King knew of the reason for the Plaintiff's absence (a serious health condition) such awareness by the Defendant was sufficient to invoke the protection of the FMLA.

Second, the evidence reveals that on the day that Ms. Lancaster placed the Plaintiff on a 90 day probation period that ultimately resulted in Mrs. Rinaldi's loss of employment, a

12

contributing factor must have been the total prior number of days absent, including the days

taken for FMLA leave explicitly, or days that were for a serious medical condition.

CONCLUSION

On the basis of the foregoing, the Defendant's Motion should be denied in its entirety,

and the Plaintiff's Motion for Summary Judgment granted in its entirety.

Dated: July 31, 2013
      Smithtown, N.Y.

Paul L. Dashefsky
Attorney for Plaintiff
317 Middle Country Rd.
Smithtown, N.Y. 11787
631-361-7981

14