EDWARDS WILDMAN PALMER LLP
Rory J. McEvoy
Attorney for Defendant
750 Lexington Avenue
New York, New York 10022
212.308.4411
rmcevoy@edwardswildman.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PHILOMENA CINDY RINALDI,

    Plaintiff,

-against-

QUALITY KING DISTRIBUTORS, INCORPORATED,

    Defendant.

No. CV 12-0141 (PKC) (ARL)

**RULE 56.1
COUNTER- STATEMENT**

    In accordance with Rule 56.1 of the Local Civil Rules of this Court, Defendant Quality King Distributors, Incorporated ("Quality King") submits the following counter-statement of material facts not in dispute to address additional paragraphs in Plaintiff's Rule 56.1 statement.

    1–81.  Quality King respectfully refers the court to its Rule 56.1 submission, dated May 31, 2013, for its statement of material facts not in dispute.

    82.    Disputed. It was Rinaldi who spoke openly of her depression, not Lancaster or Calderone. (Cal. Tr. 18).

    83.    Disputed. Rinaldi told Calderone that she was on medication, but she never mentioned the specific type of medication. (Cal. Tr. 31). Rinaldi would cry at work, but it was not a normal occurrence and when it did happen, Calderone believed it was because Rinaldi was "having a bad day." (Cal. Tr. 31-33). Rinaldi also told Lancaster that she was on medication, but did not specify the type. (Lan. Tr. 72-74). Lancaster observed Rinaldi crying at the office "every now and then." (Lan. Tr. 73).

84. Disputed. Rinaldi processed payroll for approximately 100 GSN Truck drivers in a given week, and it took her three months to train Linda Semelrath ("Semelrath") because Rinaldi's had a "complicated position." (Pl. Tr. 24, 28-29).

85. Disputed. Semelrath was hired as a human resources assistant and payroll clerk, but received additional training to serve as a back-up for Rinaldi when she was on vacation. (Lan. Tr. 36-37; Pl. Tr. 22-23).

86. Disputed. Calderone was not aware of any complaints from her co-workers regarding Rinaldi's absences. (Cal. Tr. 23).

87. Disputed. After Rinaldi's termination on October 31, 2011, Semelrath took over the majority of her job responsibilities; however, the payroll department hired a part-time employee, Barbara Goldner, to assist with the general workload, which was falling behind. (Cal. Tr. 39-42; 46-47).

88. Disputed. Quality King's attendance policy requires that if an employee is "absent for three consecutive days or more due to an illness or injury, [they] are required to bring a 'fitness for duty' letter from a physician in order to return to work." (Pl. Tr. 71). Rinaldi's non-FMLA-related absences for which she sought no medical attention, never exceeded two (2) consecutive days and generally fell around a weekend. (Pl. Tr. 57, 103-30).

89. Disputed. On the days that Rinaldi was absent without notice, other employees in the department had to perform her duties because if not completed in a timely manner, more than 100 drivers would not get paid on time. (Pl. Tr. 44-47).

90. Undisputed.

91. Disputed. Rinaldi called Calderone on August 2, 2011 to inform her that she was having a bad reaction to her depression medication, and was subsequently placed on a week-long FMLA leave. (Lan. Tr. 88-92).

92. Undisputed.

93. Disputed. Rinaldi was terminated for violating the terms of her probation, and Rinaldi never asserted that her absences for "pain in [her] right side" on October 27th and October 28th were related to her depression. (Lan. Tr. 101; Pl. Tr. 148-151).

94. Disputed. Lancaster specifically denied making the comments listed in this paragraph. (Lan. Tr. 102).

95. Disputed. Rinaldi never informed Calderone, or anyone else at Quality King, that her absences on Friday, May 13th; Friday, June 3rd; Wednesday, June 29th; Thursday, June 30th; Thursday, July 14th; Friday, July 15th; Friday, July 29th; Thursday, October 27th and Friday, October 28th were related to her depression. (Pl. Tr. 103-30, 148-151).

Dated: August 30, 2013
New York, New York

EDWARDS WILDMAN PALMER LLP

By: _____
Rory J. McEvoy