UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PHILOMENA CINDY RINALDI,

    Plaintiff,

 -against-          No. CV 12-0141 (PKC) (ARL)

QUALITY KING DISTRIBUTORS, INCORPORATED,

    Defendant.

---

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

EDWARDS WILDMAN PALMER LLP
Rory J. McEvoy
Attorney for Defendant
750 Lexington Avenue
New York, New York 10022
212.308.4411
rmcevoy@edwardswildman.com

## TABLE OF CONTENTS

                                                                                                         **Page**

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ............................................................................................. 1
ARGUMENT ........................................................................................................................... 2
    I.     RINALDI CANNOT ESTABLISH A CLAIM FOR DISABILITY
           DISCRIMINATION ..................................................................................................... 2
    II.    RINALDI HAS ABANDONED HER RETALIATION CLAIM UNDER
           THE FMLA ............................................................................................................... 7
    III.   RINALDI CANNOT SHOW THAT QUALITY KING INTERFERED
           WITH HER RIGHTS UNDER THE FMLA ............................................................. 7
CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Avillan v. Potter,*
  04 CIV. 9019 PKC FM, 2006 WL 3103309 (S.D.N.Y. Nov. 1, 2006) .................................. 6

*Carlson v. InaCom Corp.,*
  885 F. Supp. 1314 (D. Neb. 1995) ................................................................................... 3

*Di Giovanna v. Beth Israel Med. Ctr.,*
  651 F.Supp.2d 193 (S.D.N.Y. 2009) ............................................................................ 8, 9

*Dutton v. Johnson Cnty. Bd. of Cnty. Com'rs,*
  859 F.Supp. 498 (D. Kan. 1994) ..................................................................................... 3

*McMillan v. City of New York,*
  711 F.3d 120 (2d Cir. 2013) ......................................................................................... 3, 4

*Plourde v. Snow,*
  02-CV-5532, 2006 WL 4510754 (E.D.N.Y. June 14, 2006)
  aff'd sub nom. Plourde v. Paulson, 236 F. App'x 656 (2d Cir. 2007) ............................. 5

*Ramirez v. New York City Bd. of Educ.,*
  481 F. Supp. 2d 209 (E.D.N.Y. 2007) ............................................................................. 3

*Reilly v. Revlon, Inc.,*
  620 F.Supp. 2d 524 (S.D.N.Y. 2009) .............................................................................. 8

*Schachner v. Beth Israel Medical Center,*
  14 F. Supp. 2d 468 (S.D.N.Y. 1998) ........................................................................... 6-7

*Tomici v. New York City Dep't of Educ.,*
  910 F. Supp. 2d 472 (E.D.N.Y. 2012) ............................................................................ 8

**OTHER AUTHORITIES**

29 C.F.R. § 825.202(a) .............................................................................................................. 8

## **PRELIMINARY STATEMENT**

In opposition to Quality King's motion for summary judgment and in support of her cross-motion for summary judgment, Plaintiff fails to come forward with any evidence (because there is none) that creates a genuine issue of fact on either her disability discrimination or FMLA claims. Lacking any such evidence, Plaintiff resorts to misrepresenting the record, ignoring the applicable case law and relying almost solely on suspicion, belief and surmise – none of which are sufficient to avoid summary judgment.

With regard to her disability claim, Plaintiff seeks to ignore the simple fact that her frequent and unpredictable absences prevent her from performing the essential functions of her job with or without a reasonable accommodation – an essential element of her Americans with Disabilities Act ("ADA") claim. Plaintiff's argument in this regard is that her regular attendance at work was unnecessary because she was a good, well-organized employee and that this alone is sufficient to show that she is a "qualified individual" under the ADA. This argument fails because it shows a fundamental misunderstanding of the applicable law which consistently holds that an employee who cannot come to work on a regular basis is not a qualified individual under the ADA, even if she is a good employee when she does show up for work.

Rinaldi cannot point to any record evidence (again because there is none) that she ever requested or that a reasonable accommodation existed that would allow her to perform the essential functions of her position. Rinaldi admits that she never requested an accommodation from Quality King before her termination and that she rejected Quality King's offer to change her hours of work. A review of the record evidence confirms that the only accommodation that would have satisfied Rinaldi was the unlimited permission to take days off without notice – an accommodation which, as a matter of law, is unreasonable. Plaintiff's additional claim that

Quality King, in essence, made an accommodation by training another employee to cover for her when she was on vacation fails because the record shows that this employee had her own, separate job responsibilities and that the operation of the payroll department, including its critical role of ensuring that employees were paid on time, was disrupted every time that Plaintiff was absent from work.

Rinaldi's FMLA claims fare no better. Plaintiff has abandoned her FMLA retaliation claim by failing to oppose Quality King's motion for summary judgment on that claim. Rinaldi's FMLA interference claim rests solely on the false assertion that Quality King's Human Resources Director discouraged her from exercising her rights under the FMLA by telling her that she could not take her remaining FMLA leave on an intermittent basis. This assertion finds no support in the record because (i) no such statement was ever made to Rinaldi; (ii) Quality King granted every request that Plaintiff made for FMLA leave regardless of length; and (iii) Quality King approved an FMLA leave for Rinaldi while she was on probation which negates any notion that her probation prevented her from taking an FMLA-qualifying leave.

Based on the record, Quality King is entitled to summary judgment on Plaintiff's claims and her cross-motion for summary judgment should be denied because she failed to show that there are genuine issues of material fact on her claims entitling her to summary judgment.

## ARGUMENT

### POINT I

### RINALDI CANNOT ESTABLISH A CLAIM FOR DISABILITY DISCRIMINATION

In its moving brief, Quality King showed that it is entitled to summary judgment on Rinaldi's disability discrimination claim because (i) Plaintiff's excessive and unpredictable absenteeism prevented her from performing the essential functions of her job and, therefore, she

is not a qualified individual under the ADA; (ii) there is no reasonable accommodation that would allow Rinaldi to perform the essential functions of her job; and (iii) there is no evidence that Quality King's reason for her termination – excessive absenteeism unrelated to her depression – was a pretext for disability discrimination. (Main Br. 10-18).

In her opposition and cross-motion, Rinaldi ignores the record evidence and the applicable case law that her excessive absenteeism prevents her from performing the essential functions of her job – reporting to work on a regular and predictable basis. (Main Br. 11-14). Instead, and without citation to any authority, Rinaldi asserts that because when she was at work, she was regarded as a good employee and because her work was completed in her absence, this makes her a qualified individual under the ADA. (Pl. Br. 6-10). The fact that Rinaldi may have been a good employee cannot raise a genuine issue of material fact on the question of whether she was a qualified individual under the ADA because she failed to satisfy the basic requirement of showing up for work. (Main Br. 13). *See also Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 221 (E.D.N.Y. 2007) (dismissing ADA claim despite the fact that he adequately performed as a teacher because "showing up for work" was an essential function of the job).

Rinaldi's reliance on *McMillan v. City of New York*, 711 F.3d 120 (2d Cir. 2013) to demonstrate that she is a "qualified individual" is misplaced.[1] In *McMillan,* the plaintiff suffered from a disability (schizophrenia), the treatment of which prevented him from arriving to work at

---

[1] Rinaldi also relies on *Carlson v. InaCom Corp.*, 885 F. Supp. 1314 (D. Neb. 1995), in which the Court declined to hold that regular attendance was an essential function of an executive secretary position, "especially when the defendant company has declined to formulate and publish a policy relating to unscheduled absences." *Id.* at 1321. Unlike the employer in *Carlson*, Quality King does have a policy regarding absences and to the extent that this case stands for the proposition that regular attendance at work is not an essential job function, it is contrary to the substantial body of recent case law in this Circuit. Plaintiff's reliance on *Dutton v. Johnson Cnty. Bd. of Cnty. Com'rs*, 859 F.Supp. 498 (D. Kan. 1994) is similarly misplaced. In *Dutton*, the Court noted "[r]egular attendance is no doubt an essential part of almost every job, but the question is one of degree." *Id.* at 508. Again, to the extent that *Dutton* stands for the proposition that showing up for work is not an essential job function, it is contrary to the law in this Circuit.

3

a consistent time each day. The plaintiff sought an accommodation in the form of a late arrival or "flex-time" schedule. In holding that timely arrival was not an essential function of the plaintiff's job because of the nature of the work and the employer's policies with respect to "flex-time," the Court was careful to make a distinction between the failure to arrive at a specific time and complete absence from the job. *Id.* at 126 n. 3 ("[T]here is an important distinction between complete absence and tardiness in jobs that require work to be done at the office: an absent employee does not complete his work, while a late employee who makes up time does."). Rinaldi did not seek an accommodation in the form of a reduced schedule or late start. In fact, she specifically declined Quality King's offer to modify her start and/or leave time. (Pl. Tr. 130-31; 145-47). Accordingly, *McMillan* offers no support to Plaintiff's argument that she could perform the essential functions of her job, even though she was frequently absent from work because Rinaldi's job duties required her to be physically present in the office on a regular basis.

Although there is no record evidence that Rinaldi ever sought, or was denied, an accommodation from Quality King for her depression, she asserts that Quality King "made a reasonable accommodation to have backup for [Rinaldi] when she was absent; it expressly hired Linda Semelrath for that very purpose." (Pl. Br. 7). This claim finds no support in the record and indeed, the record evidence is to the contrary. Quality King originally hired Linda Semelrath ("Semelrath") as a Human Resources Assistant and payroll clerk. (Lan. Tr. 36). Quality King's Payroll Manager, Phyllis Calderone ("Calderone"), trained Semelrath to learn the payroll system and to serve as a back-up for Rinaldi when she was on vacation. (Lan. Tr. 37). Rinaldi admits that Semelrath was trained as a payroll assistant "because we needed someone to cover me from [sic] being on vacations" and that she later "became more [Calderone's] assistant and data entry [sic] of payroll." (Pl. Tr. 22-23).

Thus, the uncontradicted deposition testimony establishes that Semelrath was not hired as a reasonable accommodation for Rinaldi's disability. The fact that Quality King cross-trained Semelrath so that she would be able to cover for Rinaldi when she was on vacation is a far cry from Plaintiff's assertion that the sole or primary purpose in hiring Semelrath was to accommodate Rinaldi's disability. Plaintiff's argument is further belied by the fact that Semelrath had regular job duties, such as assisting Calderone with data entry, and that covering for Rinaldi during her frequent absences prevented Semelrath from attending to those important responsibilities. It would be unreasonable to require that Quality King hire a full-time employee to be on indefinite stand-by in the event Rinaldi calls out sick without notice. *See, e.g., Plourde v. Snow*, 02-CV-5532, 2006 WL 4510754 (E.D.N.Y. June 14, 2006) *aff'd sub nom. Plourde v. Paulson,* 236 F. App'x 656 (2d Cir. 2007) (finding that plaintiff's request for a four-hour workday was not reasonable and an undue hardship, as the employer had to pay two other employees to perform plaintiff's duties in her absence); *see also* Main Br. 12-13.

Rinaldi also argues that because Human Resources Director, Olga Lancaster ("Lancaster"), Calderone and Semelrath assumed many of her job duties after her termination the hiring of Semelrath "must be deemed [a] reasonable" accommodation and that "Plaintiff [must] be deemed to be a qualified individual . . . ." Again, Rinaldi fails to cite to any authority for this novel proposition. More importantly, the record evidence negates this claim. First, although Semelrath took over many of Rinaldi's job duties, Lancaster and Calderone also assumed some of them. Plaintiff's responsibilities were divided among three employees and were not, as Plaintiff would have it, assumed solely by Semelrath. Second, Quality King hired a part-time employee, Barbara Goldner ("Goldner"), to assist with the general workload, which was falling behind after Semelrath took over many of Rinaldi's job duties. (Cal. Tr. 39-42; 46-47). The fact

that Quality King hired Goldner, after Rinaldi's discharge, further demonstrates that each time Rinaldi called in sick without notice and Semelrath filled in for her, there was a disruption in the department because Semelrath had to forego her other responsibilities to cover for Rinaldi. Accordingly, granting Rinaldi unbridled permission to take days off without notice and requiring Quality King to maintain another full-time employee to cover is not a reasonable accommodation.

Rinaldi also fails to come forward with any evidence that the legitimate, non-discriminatory reason for her discharge was a pretext for disability discrimination. To this end, Rinaldi relies solely on the alleged comments of her supervisor, Lancaster, during her termination meeting on October 31, 2011. (Pl. Br. 11). Lancaster denies making these comments and Rinaldi can offer nothing more than her own self-serving testimony, which without more is insufficient to create a genuine issue of material fact on the issue of pretext. (Lan. Tr. 102). *See Avillan v. Potter,* 04 CIV. 9019 PKC FM, 2006 WL 3103309, at *14 (S.D.N.Y. Nov. 1, 2006) (granting summary judgment for defendants on plaintiff's race and national origin claims when the only evidence of pretext was "[plaintiff's] testimony that his supervisor has exaggerated, misconstrued, or in one context, lied about underlying events and plaintiff's conduct," noting further that "[p]laintiff's quibbles with his supervisor's version of events…are not sufficient to raise a material issue of fact requiring trial.").

In addition, if Plaintiff can require the Court to empanel a jury and hold a trial based solely on her own testimony that a manager or supervisor made an allegedly discriminatory comment, summary judgment would be unavailable in any case where the plaintiff was clever enough to make up such a comment. More is required, however, to permit a reasonable juror to render a verdict in Plaintiff's favor. *See Schachner v. Beth Israel Med. Ctr.,* 14 F. Supp. 2d 468,

472 (S.D.N.Y. 1998) (summary judgment granted where, *inter alia*, decision-maker denied stating that plaintiff's Sabbath observance was the reason she was not hired and plaintiff provided no other witnesses to refute this denial).

## POINT II

## RINALDI HAS ABANDONED HER RETALIATION CLAIM UNDER THE FMLA

In its moving papers, Quality King demonstrated that summary judgment should be granted on Plaintiff's FMLA retaliation claim because (i) Rinaldi's probation was based on ten absences from May 13, 2011 through July 29, 2011 that were unrelated to her depression; (ii) she failed to report to work on Thursday, October 27th and Friday, October 28th for reasons again unrelated to her depression and in violation of her ninety day probation; and (iii) her termination was too remote in time from her FMLA leave to permit an inference of discrimination. (Main Br. 19-24). In her opposition and cross-motion, Rinaldi merely states, without pointing to any evidence in the record, that the prior FMLA related absences "must have been" a contributing factor to her probation and ultimate termination. (Pl. Br. 13). This assumption is insufficient to defeat summary judgment on Plaintiff's FMLA retaliation claim.

## POINT III

## RINALDI CANNOT SHOW THAT QUALITY KING INTERFERED WITH HER RIGHTS UNDER THE FMLA

Quality King demonstrated that it is entitled to summary judgment on Rinaldi's FMLA interference claim because (i) Quality King granted every request for FMLA leave made by Rinaldi; and (ii) there is no evidence that Rinaldi was discouraged from taking FMLA leave. (Main Br. 23-25). In her papers, Rinaldi does not dispute (nor could she) that Quality King granted all of her requests for FMLA leave. Rather, Rinaldi appears to be relying on a "discouragement theory" to show that Quality King interfered with her rights under the FMLA.

A plaintiff proceeding on a "theory of discouragement" must demonstrate that "the employer's purported acts of discouragement would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights." *Tomici v. New York City Dep't of Educ.*, 910 F. Supp. 2d 472, 488 (E.D.N.Y. 2012) (citing *Reilly v. Revlon, Inc.*, 620 F.Supp. 2d 524, 535 (S.D.N.Y. 2009)).

Even assuming that Rinaldi could show (which she cannot) that all of her absences qualified for intermittent leave,[2] she failed to raise a genuine issue of material fact demonstrating that Quality King ever discouraged her from taking FMLA leave. Seeking to staunch the flow of life force from her interference claim, Plaintiff invents the assertion that "Lancaster explicitly advised [Rinaldi] that, although she had two weeks accrued FMLA to which she was entitled, she could not utilize them on an intermittent basis according to her medical needs." (Pl. Br. 12). This claim (which is negated by the record evidence) amounts, at best, to nothing more than Rinaldi's subjective interpretation of Lancaster's offer to take her remaining FMLA leave in a two week block to support her apparent belief she was dissuaded from taking intermittent leave, which is insufficient under the discouragement theory. *See, e.g., Di Giovanna v. Beth Israel Med. Ctr.*, 651 F.Supp.2d 193, 200-01 (S.D.N.Y. 2009) (holding that the plaintiff's subjective interpretation of a conversation with his supervisor regarding FMLA leave was insufficient under a "discouragement theory" of FMLA interference).

In *Di Giovanna,* an employee in the patient accounts department at Beth Israel Medical Center claimed that he was discouraged and/or directly told by his supervisors not to take FMLA leave to care for his sick father. His supervisor allegedly told him that there was "no need to file for FMLA leave" because another employee did not require leave when her mother passed away.

---

[2] Under the applicable regulations, "[i]ntermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202(a).

8

In granting summary judgment to Beth Israel, the Court stated that "[w]ithout even inquiring what [his supervisor] meant, [plaintiff] claims that he 'understood' [his supervisor] to have been discouraging him from filing for FMLA leave." *Id.* at 200. However, without more, this subjective interpretation of plaintiff's alleged conversation with his supervisor was not enough for a reasonable juror to find the statements as discouragement. In so holding, the Court noted that "[plaintiff's] subjective feelings…are insufficient to constitute interference under the FMLA, and not one of the alleged statements would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise FMLA rights." *Id.* at 200-01 (quotation omitted).

Here, the record confirms that none of Lancaster's alleged statements would have dissuaded a similarly-situated employee of ordinary resolve from attempting to exercise her FMLA rights. Rinaldi could not have believed that Quality King was trying to discourage her from exercising her FMLA rights because Quality King granted each of her requests for FMLA leave regardless of their length. In March 2011, Quality King approved a five week FMLA leave, and in August 2011, Quality King approved a one week FMLA leave. While she was out on this leave, Quality King sent a letter to Rinaldi, dated August 4, 2011, offering her the option to take the remainder of her FMLA leave. (Main Br. 9).

When Rinaldi returned to work on April 8, 2011, Lancaster again offered Rinaldi the option of taking her remaining two weeks of FMLA leave. (Lan. Tr. 88-92). Rinaldi testified that, in response, "[she] told [Lancaster] that it didn't work that way. That it didn't mean in two weeks [she] would be better, so it [sic] would be at risk if [she] took it all at one time. [She] might still need it in days." (Pl. Tr. 147). Rinaldi never testified (and there is no evidence in the record) that Lancaster told her that she could not take her remaining FMLA leave on an

9

intermittent basis. Instead, when asked at her deposition if she wanted to take her remaining FMLA leave in single days, Plaintiff said that "[i]f that what was needed, but she [Lancaster] put me on 90-day probation, so I couldn't take any more time off." *Id.* This testimony shows Lancaster never told Plaintiff that she could not take intermittent leave. She did not seek to take intermittent leave because of her own subjective belief that she could not do so because she was on probation. It is difficult to entertain the possibility that Plaintiff sincerely held this belief because, on the date, August 8th, that she had this conversation with Lancaster, she had just returned from an approved, one-week FMLA leave that she took while she was on probation. Under these circumstances, Plaintiff's claim that she could not take intermittent leave because she was on probation is nonsensical.

It is apparent that Rinaldi's beliefs (assuming that they were honestly held) regarding her ability to take intermittent FMLA leave were based on nothing more than her assumptions about what Lancaster meant and her own (incorrect) interpretation of the terms of her probation. These assumptions and beliefs that are unsupported by any admissible evidence do not permit a reasonable juror to find that a similarly-situated employee of ordinary resolve would be discouraged from exercising her FMLA rights.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in their main brief, Quality King's motion for summary judgment should be granted, dismissing the Complaint in its entirety with prejudice, and Plaintiff's cross-motion for summary judgment should be denied.

Date: New York, New York
August 30, 2013

EDWARDS WILDMAN PALMER LLP

By: _____
Rory J. McEvoy

10

EDWARDS WILDMAN PALMER LLP
Rory J. McEvoy
Attorney for Defendant
750 Lexington Avenue
New York, New York 10022
212.308.4411
rmcevoy@edwardswildman.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PHILOMENA CINDY RINALDI,

           Plaintiff,

   -against-

QUALITY KING DISTRIBUTORS, INCORPORATED,

           Defendant.

No. CV 12-0141 (PKC) (ARL)

**AFFIDAVIT OF SERVICE**

---

STATE OF NEW YORK   )
                             ) ss.:
COUNTY OF NEW YORK )

Jean W. McLoughlin, being duly sworn, deposes and says that she is over the age of eighteen; is not a party to this action; and that on the 30th day of August 2013, she caused true and correct copies of the foregoing REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT, RULE 56.1 COUNTER- STATEMENT, and REPLY DECLARATION OF RORY J. MCEVOY with exhibits annexed thereto to be served upon:

                 Paul L. Dashefsky, Esq.
                 317 Middle Country Road
                 Smithtown, New York 11787

by depositing true copies of said documents enclosed in a prepaid, sealed wrapper, properly addressed to the above-named party, in an official depository under the exclusive care and custody of the United States Postal Service, first class mail, within the State of New York.

                                                                Jean W. McLoughlin

Sworn to before me this
30th day of August 2013

Notary Public

JULIE L. SAUER
Notary Public, State of New York
No. 02SA6233540
Qualified in New York County
Commission Expires December 27, 2014