UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PHILOMENA CINDY RINALDI,

          Plaintiff,

        -against-

QUALITY KING DISTRIBUTORS,
INCORPORATED,

          Defendant.

No. CV 12-0141 (PKC) (ARL)

**PROPOSED JOINT
PRE-TRIAL ORDER**

Pursuant to the Court's Order, dated October 18, 2013, the undersigned counsel for the parties hereby respectfully submit this proposed Joint Pre-Trial Order:

**I.**      **CAPTION**

      The full caption of the action is as indicated above.

**II.**     **PARTIES AND COUNSEL**

   a)    For Plaintiff

       Paul L. Dashefsky, Esq.
       317 Middle Country Rd.
       Smithtown, New York 11787
       Telephone Number: (631) 361-7981
       Fax Number: (631) 724-5163

   b)    For Defendant

       Rory J. McEvoy, Esq.
       Katherine D. Watson, Esq.
       Edwards Wildman Palmer LLP
       750 Lexington Avenue
       New York, New York 10022
       Tel.: (212) 308-4411
       Fax:  (212) 308-4844

### III.     JURISDICTION

a)     Plaintiff's Statement

This action arises under the Family and Medical Leave Act of 1993, 29 U.S.C. 2601, *et seq.* ("FMLA"), under the Americans with Disabilities Act of 1990, 42 U.S.C. 12101, *et seq.* ("ADA"), and under the New York State Human Rights Law ("NYSHRL"), New York Executive Law sections 290, *et seq.*, pursuant to the doctrine of Supplemental Jurisdiction, 28 U.S.C. § 1367.  Jurisdiction of this action is conferred on this Court by 29 U.S.C. § 2617 (a) (2), the "Right of Action" provision of the FMLA, 28 U.S.C. § 1331 ("federal question jurisdiction") and § 1343(4) ("civil rights jurisdiction").

This action arises out of the employment and termination of employment of the Plaintiff by the Defendant, all of which occurred at the Defendant's Bellport, Suffolk County, New York location.

b)     Defendant's Statement

Defendant agrees that the Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and that the Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

### IV.     CLAIMS AND DEFENSES

a)     Plaintiff's Claims

1.     The Defendant interfered with, restrained, and denied the Plaintiff's right to exercise her rights under the FMLA, and terminated her employment in violation of the FMLA.

2.     The Defendant terminated the Plaintiff's employment on the basis of her disability (Clinical Depression) in violation of the ADA.

3.      The Defendant terminated the Plaintiff's employment on the basis of her disability (Clinical Depression) in violation of the NYSHRL.

b)      <u>Defendant's Defenses</u>

1.      Plaintiff's claim for interference under the FMLA fails because Plaintiff was never denied any benefits to which she was entitled to under the FMLA.

2.      Plaintiff cannot demonstrate that she was terminated for exercising her rights under the FMLA.

3.      Plaintiff's claims for emotional distress and punitive damages are not recoverable under the FMLA.

4.      Plaintiff cannot sustain her claim for disability discrimination under the ADA and/or the NYSHRL because she is not a "qualified individual" who could "perform the essential functions of her position," either with or without a reasonable accommodation.

5.      Assuming Plaintiff could demonstrate that she is a "qualified individual" under the ADA and/or the NYSHRL, an accommodation of Plaintiff's alleged disability would not be reasonable because it would impose an undue hardship on Defendant.

6.      Plaintiff failed to mitigate her damages.

## V.      **JURY OR BENCH TRIAL**

a)      <u>Joint Statement</u>

The parties agree that the action should be tried by a jury and estimate that the trial will take approximately 2-4 days.

## VI.      **CONSENT TO TRIAL BY MAGISTRATE JUDGE**

a)      The parties have not all consented to trial before the presiding Magistrate Judge.

## VII.     WITNESS LIST

a)     Plaintiff's Witness List:

1.     **Philomena Cindy Rinaldi**
       Plaintiff will testify as to the facts of her medical condition and the course of events at work that resulted in the termination of her employment.

2.     **Dr. W. Grant LeMaster**

3.     **Ernest Leuci**
       Both Dr. LeMaster and Dr. Leuci will testify concerning the Plaintiff's medical condition, and the emotional impact that the Defendant's conduct had on the Plaintiff,

4.     **Dominic James Rinaldi**

5.     **Dominic Rinaldi**

6.     **Kim Rinaldi**

7.     **Marie Rinaldi**

8.     **Cindy Rinaldi**

9.     **Josephine Greisofe**

10.    **Janet Palina**

11.    **Carlo Strazzulo**
       Witnesses 4 through 11 will testify concerning the Plaintiff's medical condition and the emotional impact that Defendants conduct had on the Plaintiff.

Plaintiff reserves the right to call as a witness any individual designated by the Defendant.

b)     Defendant's Witness List: Defendant intends to call the following individuals as witnesses at trial and anticipates that each of them will testify in person.

1.     **Olga Lancaster**, 181 Gibson Avenue, Brentwood, New York 1171, Human Resources Director at Quality King. Ms. Lancaster will testify as to the following subjects: (i) Quality King's payroll department generally; (ii) Plaintiff's role and duties; (iii) Quality King's anti-discrimination and complaint procedure; (iv) Quality King's FMLA policy; (v) Plaintiff's prior FMLA leave; (vi) Quality King's Attendance Policy; (vii) Plaintiff's probation for excessive absenteeism; and (viii) Plaintiff's termination in October 2011.

2.     **Phyllis Calderone**, 2809 Falcon Avenue, Medford, New York 11753, Payroll Manager at Quality King. Ms. Calderone will testify as to the following subjects: (i) the duties and responsibilities of employees in the payroll department; (ii) Quality King's payroll process generally; (iii) Plaintiff's absences from May 2011 through October 2011; and (iv) role of Linda Semelrath in the payroll department.

4

3. **Linda Semelrath**, 69 Cliff Road East Wading River, New York 11792, Payroll/Human Resources Assistant at Quality King. Ms. Semelrath will testify as to her duties and responsibilities in the payroll department and the training she received to cover for Plaintiff when she was absent.

Defendants reserve the right to call as a witness any individual designated by the Plaintiff.

## VIII.   DEPOSITION TESTIMONY

a)   Plaintiff's List

1.   January 22, 2013, Deposition of Phyllis Calderone, pages 15-23; pages 30-41.

Defendant's Objections:  Defendant objects to the use of Calderone's deposition testimony as unnecessarily cumulative under Fed. R. Evid. 403 because Defendant intends to call Calderone as a witness at trial.   Defendant further objects to this testimony to the extent it contains hearsay. Fed. R. Evid. 801, 802, 803 and 805.

b)   Defendant's List: Defendant does not intend to rely on deposition testimony in its case in chief unless: (i) a witness becomes unavailable; or (ii) the use of deposition testimony is necessary for impeachment purposes.

## IX.   STIPULATIONS

a)   Stipulated Facts

1.   Quality King is in the business of selling health and beauty products to retailers throughout the United States.

2.   GSN Trucking ("GSN") is a Quality King subsidiary that employs the truck drivers who deliver Quality King's goods.

3.   Rinaldi applied for and was hired as an assistant payroll clerk at GSN.  In 2005, she was promoted to payroll manager.

4.      After her promotion, Quality King consolidated the GSN payroll department with the Quality King payroll department and, at that point, Rinaldi became employed by Quality King.

5.      After the consolidation, Rinaldi's job functions remained unchanged; she was still the payroll manager for all GSN employees, however, she now reported to the Human Resources Director at Quality King, Olga Lancaster ("Lancaster").

6.      In addition to Rinaldi and Lancaster, the payroll department had two other employees, Phyllis Calderone ("Calderone"), Quality King's payroll manager, who was responsible for paying over 1000 Quality King employees, and Linda Semelrath ("Semelrath").

7.      When Semelrath was hired, Rinaldi trained her to perform Rinaldi's job functions as a backup for when Rinaldi was absent.

8.      Rinaldi managed the weekly payroll of about 100 GSN Trucking employees.

9.      Rinaldi's job duties included processing the driver route logs for all truckers and calculating the mileage pay, delivery pay, pickup pay, case count, breakdown pay, layover pay, and training pay to which each trucker was entitled for the previous week.

10.     During a typical week, Rinaldi would process between 115 and 120 route logs.

11.     Although route logs were continuously coming in, the start of each week's payroll processing began on Thursday afternoon.

12.     From Thursday afternoon until Tuesday afternoon, Rinaldi would process route logs one at a time.

13.     Beginning on Wednesday morning, Rinaldi entered the information she obtained from the logs into the payroll processing software.

14. This information had to be submitted by 1 p.m. on Wednesday in order for a register to be created for Rinaldi to review and approve by 3 p.m.

15. If Rinaldi did not meet these deadlines, GSN employees would not get paid. On Thursday mornings, Rinaldi would personally stuff paychecks into envelopes for the GSN employees, and in the afternoon, she would once again begin processing route logs.

16. In addition to payroll, Rinaldi also handled health insurance for all GSN employees, processed cash advance requests (which had to be taken in person over the phone), kept track of vacation, sick time and absences, and submitted monthly reports to the Accounting Department.

17. When Rinaldi began working at Quality King, she received a copy of the Employee Handbook (the "Handbook"), which contains policies on discrimination, the FMLA, and attendance.

18. Rinaldi signed a document acknowledging receipt of these policies, and testified that she understood them.

19. The Handbook sets forth Quality King's policy prohibiting all forms of employment discrimination, including disability discrimination.

20. The policy "relates to all terms and conditions of employment, including . . . discipline, . . . leave of absence, . . .and other working conditions." The Handbook invites employees with disabilities to alert Quality King of the need for an accommodation and further states that Quality King would "be happy to work with [employees] to make [their] job[s] easier and more productive in full compliance with any applicable legal requirements to make reasonable accommodations . . ."

21.     Employees who work at Quality King for at least one year and for over 1250 hours during the previous 12 months are eligible for a maximum of twelve weeks of leave per year pursuant to Quality King's FMLA policy.

22.     The policy states that "[u]npaid leave *must* be granted for . . . a serious health condition that make[s] the employee unable to perform the employee's job."

23.     At either "the employee or employer's option, certain kinds of paid leave may be substituted for unpaid leave."

24.     Further, "[t]he employee may be required to provide advance leave notice and medical certification" and "leave may be denied if requirements are not met."

25.     The FMLA section of the Employee Handbook also states that employees will be "restored to their original or equivalent positions with equivalent pay, benefits, and other employment terms."

26.     It further states that the "FMLA makes it unlawful for an employer to: interfere with, restrain, or deny the exercise of rights provided under FMLA; discharge or discriminate against any person for opposing any practice made unlawful by FMLA or for involvement in any proceeding under or relating to FMLA."

27.     Rinaldi also understood her obligation to obtain certification from her doctor, and knew that the only employees ever terminated after exercising their FMLA rights were those that took more than the statutory twelve weeks.

28.     On March 17, 2011, Rinaldi did not come to work because she was suffering from anxiety, panic attacks and depression.

29.     Rinaldi called Calderone to report that she could not make it into work.

8

30.    Rinaldi was admitted to the hospital for eight (8) days beginning on March 17, 2011, and her husband notified Quality King of Rinaldi's hospitalization.

31.    Rinaldi stayed in contact with Calderone while she was in the hospital, and told Calderone that she was out because of depression.

32.    Quality King designated Rinaldi's time out as FMLA leave.

33.    This was Rinaldi's first FMLA leave.  Even though she understood that she could take leave under the FMLA without retaliation, she "didn't want to take any time off" and she "was worried about [her] job" and "very nervous and apprehensive" about everything.

34.    On April 4, 2011, Lancaster sent Rinaldi a letter describing her rights under the FMLA and attaching the forms necessary for approval of Rinaldi's leave.

35.    The leave was approved and lasted for five weeks and two days, through April 22, 2011.

36.    Quality King paid Rinaldi her normal salary for the first three weeks of her leave and then used all but one day of her vacation/sick time to continue paying her for the remainder of the leave.

37.    During her last week of leave, Calderone visited Rinaldi at her home and "made [Rinaldi] understand that no matter how [she] felt, [] they would back [her] up."

38.    Rinaldi returned to work on April 25, 2011.

39.    After returning from her leave, Rinaldi was absent on ten days over a two and a half month period from May 13, 2011 to July 29, 2011.

40.    Rinaldi was absent with no advance notice on Friday May 13, Friday June 3, Monday June 13, Wednesday and Thursday June 29-30, Thursday and Friday July 14 and 15, and Friday July 29.

41.     On all of these occasions, Rinaldi called Calderone around 8 a.m. to inform her that she "was unable to come to work."

42.     Over the course of these two and a half months, Rinaldi never sought an accommodation to her work schedule.

43.     The warning letter noted that Rinaldi had been absent ten days since coming back from leave, and stated that the functions of the job require "attention to detail" and availability "to tend to the needs of the employees that [Rinaldi] prepares payroll for."

44.     The notice also stated that Rinaldi's absenteeism was "affecting the department as a whole" because "[t]he rest of the staff is picking up the slack which is not fair."

45.     The notice indicated that Rinaldi was being put on a 90-day probation and that if she "is absent for any reason in the next 90 days, [Quality King] would have no alternative but to terminate her."

46.     The same day that Rinaldi received the warning notice, August 1, 2011, she left after reviewing it, and was "immediately" absent from work.

47.     Rinaldi went to the hospital, but was not admitted.

48.     On August 2, 2011, Rinaldi called Calderone to inform her that she was having a bad reaction to her depression medication and her doctor instructed her to remain home for the rest of the week (which she did).

49.     On August 4, 2011, Lancaster wrote Rinaldi a letter acknowledging that Rinaldi's absence was for the purpose of seeking "more medical attention for [her] condition."

50.     The letter said that with a doctor's note, the week-long absence would be considered FMLA leave.

51.     The letter also offered Rinaldi the option to "take the remainder of [her] FMLA leave" or to return to work (with the appropriate doctor's note) to continue serving out her probationary period.

52.     During the probationary period, Rinaldi did not seek any accommodation to her work schedule.

53.     Quality King offered Rinaldi the opportunity to work fewer hours per day, but she declined the offer.

54.     Rinaldi brought in a doctor's note, written on a prescription pad that stated: "please excuse the above patient from work 10/27, 10/28. May return on 10/31."

55.     When Rinaldi returned to work on October 31, 2011, she gave the note to Lancaster, and Lancaster informed her that she was being terminated for violating her probation.

56.     On the days that Rinaldi was absent without prior notice, other employees in the department had to perform her duties because, if her tasks were not completed in a timely fashion, more than 100 drivers would not get paid on time.

57.     Covering for Rinaldi in her absence was not Semelrath's only job duty.

58.     Rinaldi (i) applied for and was granted FMLA leave in March of 2011; (ii) was granted additional leave by Quality King from August 1-5, 2011; and (iii) was not discharged until October 31, 2011.

## X.      **EXHIBITS**

a)      Plaintiff's List:

      1.      Medical records of W. Grant Lemaster regarding the Plaintiff.

      2.      Medical records of Ernest Leuci regarding the Plaintiff.

      3.      Plaintiff's application for employment with GSN Trucking.

      4.      GSN Trucking Payroll list of job duties.

5.	Plaintiff's handwritten list of job duties.

6.	Status/Payroll Change Form for Cindy Rinaldi effective 1/10/05.

7.	Three page Employee's Personnel Record for Plaintiff.

8.	Three page document showing Colonial Life changes in Plaintiff's coverage effective 11/4/2011.

9.	Document showing termination of Plaintiff's UNUM coverage effective 10/31/2011.

10.	November 4, 2011 letter from Olga Lancaster to Plaintiff and her family concerning termination of health insurance benefits, with enclosures.

11.	Advance Time Off Request and Notification Form dated 12/15/10 for Plaintiff.

12.	Advance Time Off Request and Notification Form dated 11/10/10 for Plaintiff.

13.	Principal Financial Group Employee Change Report for Plaintiff dated 10/31/2011.

14.	Employee Warning Notice to Plaintiff dated July 29, 2011.

15.	Letter to Plaintiff from Olga Lancaster dated August 4, 2011.

16.	Medical Note from Kristina Zuozzolo dated 10/27/11 regarding Plaintiff.

17.	Certification of Health Care Provider for Employee's Serious Health Condition completed by Ernest Leuci dated 4/9/11, regarding Plaintiff.

18.	Letter dated April 4, 2011 from Olga Lancaster to Plaintiff, with enclosures.

Plaintiff reserves the right to present any exhibits identified by the Defendant as exhibits and reserves the right to present additional exhibits if deemed necessary for rebuttal.

Defendant's Objections: Defendant objects to Plaintiff's Exhibit 5 as inadmissible hearsay under Fed. R. Evid. 801, 802, 803 and 805. Defendant further objects to this evidence on relevancy grounds under Fed. R. Evid. 401, 402 and risk of unfair prejudice under Fed. R. Evid. 403.

b)    Defendant's Exhibits

| No. | Description |
|---|---|
| A | Plaintiff's Employment Application with GSN Trucking |
| B | Quality King's Payroll Manager Job Description |
| C | GSN Truck Driver Trip Form and Route Log |
| D | GSN Payroll Posting Sheet |
| E | ADP Periodic Summaries for GSN Trucking |
| F | GSN Truck Driver Advance Summaries |
| G | Quality King's Anti-Discrimination Policy |
| H | Quality King's Time & Attendance Policies |
| I | Quality King's FMLA Policy |
| J | Plaintiff's Acknowledgement of Receipt of Quality King's Employee Handbook |
| K | Letter from Lancaster to Plaintiff enclosing FMLA Certification Documents (dated April 4, 2011) |
| L | FMLA Certification Prepared by Ernest Leuci, M.D. (dated April 9, 2011) |
| M | Quality King's Attendance Records for Plaintiff |
| N | Quality King's Payroll Records for Plaintiff |
| O | Plaintiff's W-2 Form 2010 |
| P | Plaintiff's W-2 Form 2011 |
| Q | Employee Warning Notice (dated July 29, 2011) |
| R | Letter from Lancaster to Plaintiff regarding availability of additional FMLA leave (dated August 4, 2011) |
| S | Delivery Confirmation for August 4, 2011 Letter from Lancaster to Plaintiff |
| T | Medical note prepared by Kristen Zuzzolo, P.A. (dated October 27, 2011) |
| U | Plaintiff's Responses to Defendant's First Set of Interrogatories |
| V | Plaintiff's Amended Complaint |
| W | Plaintiff's handwritten list of jobs applied for |
| X | Statements concerning Plaintiff's receipt of unemployment compensation |
| Y | Pay stubs concerning income Plaintiff has received since October 2012 |
| Z | Plaintiff's Resume |
| AA | Plaintiff's medical records from Ernest Leuci, M.D. |
| BB | Plaintiff's medical records from William G. Lemaster, D.O. |
| CC | Plaintiff's medical records from Kristina Zuzzolo, M.D. |
| DD | Letter from Lancaster to Plaintiff regarding COBRA coverage (dated November 4, 2011) |
| EE | Statement from Plaintiff declining health coverage (dated November 13, 2000) |
| FF | Memorandum to P. Rinaldi from Human Resources regarding 401(k) enrollment (dated July 6, 2007) |
| GG | Oxford Enrollment Application for P. Rinaldi (dated August 27, 2007) |
| HH | Coverage Termination for P. Rinaldi (dated December 31, 2009) |
| II | Benefit Enrollments for Plaintiff as of October 28, 2011 |
| JJ | Flexible Spending Account Enrollment Form (dated December 2, 2009) |
| KK | Advance Time Off Request and Notification Form (dated June 4, 2008) |
| LL | Advance Time Off Request And Notification Form (dated November 10, 2010) |
| MM | Advance Time Off Request and Notification Form (dated December 15, 2010) |

| NN | Salary Deferral for P. Rinaldi (dated May 3, 2010) |
| OO | Quality King Payroll/Human Resources Clerk Job Description |
| PP | Warning Notice issued to D. O'Dell (dated February 23, 2010) |
| QQ | Termination Notice of D. O'Dell (dated March 1, 2010) |
| RR | Warning Notice issued to N. Hamilton (dated October 18, 2011) |
| SS | Termination Notice of N. Hamilton (dated October 28, 2011) |
| TT | Warning Notice issued to L. Silver (dated April 12, 2010) |
| UU | November 10, 2010 Termination Notice of L. Silver (dated November 10, 2010) |

Plaintiff's Objections: Plaintiff objects to Defendant's Exhibits PP through UU on relevancy grounds under Fed. R. Evid. 401, 402 and risk of unfair prejudice under Fed. R. Evid. 403.

Dated: New York, New York
         October 31, 2013

PAUL L. DASHEFSKY

By:_____
    Paul L. Dashefsky
Attorneys for Plaintiff
317 Middle Country Road
Smithtown, New York 11787
Tel: (631) 361-7981

EDWARDS WILDMAN PALMER LLP

By:_____
    Rory J. McEvoy
    Katherine D. Watson
Attorneys for Defendant
750 Lexington Avenue
New York, New York 10022
Tel: (212) 308-4411

SO ORDERED

_____
Honorable Pamela K. Chen
November ___, 2013